UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STEPHEN DAVIS,
individually and on
behalf of all others
similarly situated,
   Plaintiff,

v.                                CIVIL ACTION NO. 1:12-CV-

SAMSUNG ELECTRONICS CO., LTD. and
SAMSUNG ELECTRONICS AMERICA, INC.,
   Defendants.

**CLASS ACTION COMPLAINT AND REQUEST FOR JURY TRIAL**

Steven Davis (hereinafter also referred to as "proposed class representative") through his counsel, on behalf of himself and all other individuals and entities similarly situated (as more fully discussed *infra*), initiate this putative nationwide class action that involves Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.

Introduction

1. Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. sold DLP (Digital Light Processing) televisions (hereinafter "class television" or "class televisions") in the United States from 2006 through and including 2009.

2. Class televisions include but not limited to the following- 2008 model year HL series televisions: HL-50A650, HL-56A650, HL-61A650, HL-72A750 and HL-67A750; 2007 model year HL series televisions: HL-T5075S, HL-T5087S, HL-T5687S, HL-T6187S, HL-T5089S, HL-T5689S, and HL-T6189S; and, 2006 model year HL series televisions: HL-S6186W,

HL-S5686W, HL-S5086W, HL-S4266W and HL-S4666W.

3. All class televisions are predisposed to premature performance degradation and/or complete and total video failure within the express and implied warranty periods caused by defective design and manufacture including but not limited to the use of sub-standard components.  All class televisions are prematurely failing during their reasonably expected lifetime.

4. While some performance degradation occurs during normal operation of any television over time, class televisions have abnormally accelerated degradation of the light engine including but not limited to the DLP chip, DMD (digital micromirror device) printed wiring board and color wheel.  The DLP chip, DMD printed wiring board and color wheel prematurely fail due to voltage overload, ripple current, thermal fatigue and other causes including design and manufacture defects.  The light engine, including but not limited to the DLP chip, DMD printed wiring board and color wheel should last the useful life of the television without repair. Industry standards for the useful life of DLP televisions is in excess of 60,000 hours.

5. Other concurrent causes of class television light engine failure are insufficient cooling fans, inadequate heat sinks (including thermal paste) and other ventilation components that result in component thermal fatigue / thermal overload and premature failure.

6. Class televisions are defective with respect to their design, workmanship, material and manufacture predisposing class televisions to premature performance degradation and/or complete and total video failure while operating in intended and foreseeable consumer environments.

7. The only corrective measure to remedy class television defects is to replace the light engine, DMD board, DLP chip and/or color wheel. Class televisions are failing due to design and manufacture defects after accumulating one quarter to one third of their reasonably anticipated useful life.

8. The proposed class representative and members of the proposed class request *inter alia* return of the purchase price of class televisions, injunctive relief, monetary damages, court costs and attorney's fees under theories of breach of express and implied warranties, intentional misrepresentation, unfair and deceptive business act practices prohibited by Mass. Gen. L. ch.93A together with a claim for unjust enrichment / restitution.

Parties to this Proceeding

9. Steven Davis is an adult individual residing at 57 Edwards Ave., Swansea, Massachusetts 02777.  Mr. Davis owns a model HL-T5075S class television purchased from an authorized Samsung television dealer.

10. Samsung Electronics Co., Ltd. (hereinafter "SEC") is a duly organized South Korean corporation with a principal place of

3

business at 1320-10, Seocho 2-dong, Seocho-gu, Seoul 137-857, South Korea.  For over thirty years, SEC marketed and sold its consumer electronic products under the brand name Samsung in the United States including the proposed class representative's television and all other class televisions.  SEC had substantial participation in designing, manufacturing and testing class televisions. SEC licensed technology was incorporated in class televisions.

11.  SEC had substantial participation in drafting the Owner's Instructions (also referred to as the "user Instructions" by the Defendants) and warranties (including warranty extensions and secret warranties) that accompanied class televisions.  SEC had substantial participation in the advertisement, marketing, distribution and sale of Samsung class televisions in the United States.

12. SEC had substantial participation in drafting service and repair publications for class televisions as well as other related materials.

13. Defendant Samsung Electronics America, Inc. (hereinafter "SEA") is a duly organized New York corporation with a principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey 07660. SEA is a wholly owned subsidiary of SEC.  SEA imports, advertises, markets, distributes and sells Samsung products manufactured by SEC and/or incorporating SEC licensed technology in the United States under the brand name Samsung.

14.  SEA had substantial participation in designing, manufacturing and testing class televisions.  SEA licensed technology from SEC that was incorporated in class televisions.

15.  SEA had substantial participation in drafting the Owner's Instructions and warranties (including warranty extensions and secret warranties) that accompanied class televisions.

16. SEA had substantial participation in drafting service and repair publications for class televisions as well as other related materials.

17. At all relevant times, SEA acted as an agent of SEC performing activities concerning advertising, warranties, warranty repairs, dissemination of technical information and monitoring the performance of Samsung branded televisions in the United States, including substantial activities that occurred within Massachusetts.

18. SEC is the parent company of SEA (hereinafter collectively referred to as "Defendants").

19. SEA is a mere instrumentality of SEC for activities conducted by SEC in Massachusetts and throughout the United States.  SEA orchestrates and controls all activities concerning the sale of SEC consumer electronic products including class televisions in the United States.

20. There is a unity of interest and ownership between SEC and SEA that adherence to the fiction of separate identity would serve to defeat justice and equity.  The separate identity of SEC's

subsidiary SEA ceased to exist and injustice would result from respecting the corporate form.

Jurisdictional and Venue Statement

21. This district court has original jurisdiction under 28 U.S.C. §1332(a)(1-3), 28 U.S.C. §1332(d)(2)(A)-(C) and 28 U.S.C. §1367 since diversity jurisdiction exists between the proposed class representative and the Defendants, there are in excess of 10,000 proposed class members and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

22. *In personam* jurisdiction exists over the Defendants under the so-called Massachusetts long arm statute, Mass. Gen. L. ch. 223A, §3.[1]  The Defendants are persons within the context of Mass. Gen. L. ch. 223A, §1.  Defendants directly and through their agents regularly transact business and otherwise derive substantial revenue in Massachusetts.  Defendants also conduct continuous and systematic economic activities in Massachusetts including intentionally and purposefully placing their products in the stream of commerce in Massachusetts.  Subjecting the Defendants to *in personam* jurisdiction in the Commonwealth of Massachusetts does not violate the Defendants' due process rights and comports with requirements of fair play and substantial justice.

---

[1]  Chapter 233A is captioned "Jurisdiction of Courts of the Commonwealth Over Persons in Other States and Countries."

23. Venue is conferred by 28 U.S.C. §1391 as the Defendants regularly and purposefully do business in this judicial district and a substantial part of the events giving rise to the claim occurred here.

Class Action Allegations

24. The proposed class representative initiates this national class action pursuant to Fed. R. Civ. P. 23(b)(1), 23(b)(2) and 23(b)(3) on behalf of himself and all members of the following proposed sub-classes (hereinafter collectively referred as "proposed class members") defined as follows: (sub-class no. 1) All noncommercial owners and former owners of class televisions sustaining monetary loss incurred from repairing and/or prematurely replacing the class television and components whose claims are governed by the application of Massachusetts substantive law; (sub-class no. 2) All noncommercial owners and former owners of class televisions sustaining monetary loss incurred by diminution of class television resale value whose claims are governed by the application of Massachusetts substantive law; (sub-class no. 3) All noncommercial owners and former owners of class televisions sustaining monetary loss incurred from repairing and/or prematurely replacing the class television and components whose claims are governed by the application of substantive law substantially similar to Massachusetts substantive law; and, (sub-class no. 4) All noncommercial owners and former owners of class televisions

7

sustaining monetary loss incurred by diminution of class television resale value whose claims are governed by the application of substantive law substantially similar to Massachusetts substantive law.

Numerosity of the Class

25. The proposed class is so numerous that individual joinder of all potential members is impracticable under Fed. R. Civ. P. 19 or 24. There were in excess of 200,000 class televisions imported into the United States.  Although information concerning the number, location and identity of all proposed class members is not presently ascertainable, this information is obtainable through discovery from the Defendants.

Existence of Common Questions of Law and Fact

26. Common questions of law and fact exist as to all members of the proposed sub-classes and predominate any and all issues of law and fact affecting individual members of the class.  These issues include but are not limited to:

   a.  Whether class televisions are defectively designed and/or manufactured so as to predispose the television to premature failure including but not limited to the light engine, DLP chip and/or DMD printed wiring boards;

   b.  Whether class televisions sustained damage directly or indirectly by use of defective electronic components including

8

but not limited to printed wiring boards and sub-assemblies that were of inadequate voltage and/or heat rating;

c. Whether class televisions sustained damage directly or indirectly caused by inadequate cooling fans and/or defective heat sinks and absence of thermal paste;

d. Whether the Defendants conducted adequate testing of class televisions to determine maintenance procedures and durational warranties;

e. Whether the Defendants breached their express warranties in that class televisions were defective with respect to design and manufacture;

f. Whether the Defendants breached their implied warranties in that class televisions were defective with respect to design and manufacture;

g. Whether the Defendants breached their implied warranties in that class televisions were accompanied by Owner's Instruction incorporating incorrect television maintenance recommendations and service intervals;

h. Whether the Defendants fraudulently or negligently misrepresented and/or concealed material facts concerning characteristics of class televisions;

i. Whether the Defendants were aware of defects in class televisions and actively, affirmatively and/or fraudulently concealed the existence of defects in the televisions and/or

incorrect information incorporated in the respective accompanying Owner's Instructions;

j. Whether the Defendants committed unfair and deceptive business trade act practices in the sale of class televisions including the accompanying warranties and subsequent secret warranties;

k. Whether the Defendants had a duty to disclose their knowledge of class television defects and/or knowledge that the Owner's Instructions for class televisions set forth incorrect maintenance recommendations and service intervals;

l. Whether the Defendants were unjustly enriched by their warranty breaches, misrepresentations and deceptive business practices;

m. Whether proposed class members are entitled to restitution, monetary damages and/or injunctive relief;

n. Whether the court should establish a constructive trust funded by the benefits conferred upon the Defendants by their wrongful and unlawful conduct;

o. Whether class televisions have a diminished life and residual value;

p. Whether proposed class members are able to economically afford individual litigation against the Defendants; and,

q. Whether the Defendants had a duty to disclose the safety risks of overheated class televisions catching fire.

Typicality of Claims or Defenses of a Definable Class

27. The claims and defenses of the proposed class representative is typical of the claims and defenses of proposed class members.  Class claims arise out of ownership of class televisions as defined in ¶¶2-7.   The Defendants in this proposed class action have no counterclaims or defenses unique to the proposed class representative.

Adequate Representation

28. The proposed class representative has no conflicting interests with any other class member.  The proposed class representative will fairly and adequately protect the interests of the class.  Claims of the proposed class representative and proposed class members' claims are so interrelated that the interests of the proposed class members will be fairly and adequately protected in their absence.   The proposed class representative has retained counsel adequate to protect the interests of all proposed class members.

Superiority of a Class Action

29. Maintenance of a class action is the most economical procedural device to litigate Samsung class television defect claims. Prosecution of separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendants as recognized by Fed. R. Civ. P. 23(b)(1)(A).

30. Prosecution of separate actions by or against individual class members would create the risk of inconsistent adjudications with respect to individual class members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests as recognized by Fed. R. Civ. P. Rule 23(b)(1)(B).

31. There is a substantial likelihood that the Defendants will act or refuse to act on grounds generally applicable to the class, so that final injunctive relief or corresponding declaratory relief is appropriate as recognized by Fed. R. Civ. P. 23(b)(2).

32. Questions of law and fact common to members of the class predominate over any questions affecting any individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy as recognized by Fed. R. Civ. P. 23(b)(3).

Further Allegations

33. The proposed class representative and proposed class members had valid and binding warranties and contracts with the Defendants and were reasonably expected by the Defendants to use their respective class televisions in the manner in which the televisions were used. The proposed class representative and proposed class members complied with all warranty and contractual obligations including all warranty, warranty notice, maintenance and product use obligations

12

for their respective class televisions. The proposed class representative and proposed class members operated their televisions under normal anticipated conditions in noncommercial environments.

34. The proposed class representative's class television cost approximately $1,800.00 at the time of purchase. Design and manufacture defects as described in this complaint caused his class television to prematurely fail in 2011. The proposed class representative will incur substantial expense repairing and/or replacing his class television. In many instances, class television repair is not economically warranted given durational issues with replacement components and the cost of a replacement television.

35. The Defendants timely received the proposed class representative's breach of warranties notice through authorized representatives and suffered no resulting prejudice. The proposed class representative contacted SEA via telephone concerning his class television failure and warranty breach. The proposed class representative was informed by representatives of SEA that SEC and SEA would not provide assistance in repairing the class televisions because the television was outside of the express warranty period set out in his Owner's Instructions.

36. The Defendants refused to fully reimburse or compensate the proposed class representative for class television repair expenses or provide a suitable substitute or replacement television. Although his television failure occurred outside the unilateral one

year express warranty period set out in his class television Owner's Instructions (which was neither seen nor bargained for prior to purchase), the proposed class representative's television exhibited unmistakable symptoms (known only by the Defendants) of degradation and impending premature failure within the express warranty period.

37. Despite actual and constructive knowledge of class television defects as described in this complaint, the Defendants failed to cure class television defects within the unilateral express warranty period and thereby breached the terms of the express warranty. Through no fault of his own, the proposed class representative did not possess sufficient technical expertise to recognize symptoms of impending television failure although this information was well known to the Defendants but kept secret.  The proposed class representative relied upon material misrepresentations, fraudulent statements and/or material omissions of employees and agents of the Defendants at the time of purchase including but not limited to the useful and expected life of class televisions.

38. The Defendants' misrepresentations and fraudulent statements were received by the proposed class representative prior to and at the point of class television purchase.  These representations were made by retail vendors referencing Samsung television specification publications.  The representations created a reasonable belief the useful life expectancy of class televisions without a major failure was 60,000 hours.

39. The Defendants actively concealed the true reasonably expected duration of class television components including but not limited to the light engine, DLP chip and DMD printed wiring board sub-assemblies the from the proposed class representative and all class television purchasers.   The Defendants intentionally failed to inform class television purchasers and/or their retail vendors that class televisions incorporated defective and/or improperly tested electronic components that would prematurely fail within the expected useful life of the television.

40. The Defendants intentionally failed to inform class television purchasers that DLP technology incorporated in class televisions results in higher operational costs than conventional cathode ray tube televisions or other competitive technology because the light engine, DLP chip and DMD printed wiring board sub-assemblies and other electronic components prematurely fail within the expected useful life of the television.   The Defendants actively and fraudulently concealed the existence of class television design and manufacture defects and that class televisions were accompanied by an Owner's Instructions incorporating improper maintenance recommendations and maintenance intervals.[2]

---

[2] A reasonable person who purchased a class television making an inquiry into the cause of television failure would not have discovered that class televisions had design and manufacture defects and improper maintenance and use recommendations because those facts were inherently unknowable and were further concealed by the Defendants' affirmative acts (including active fraud with the intent

15

41. The Defendants' customer service telephone representatives made false and fraudulent representations to class members as to the cause and existence of defects in class televisions although the service representatives received thousands of consumer complaints that class televisions prematurely failed. The Defendants' employees falsely represented certain conditions for which the Defendants were not responsible caused class television failures and/or denied the existence of known class television defects.

42. Authorized Samsung television dealers and service centers did not have knowledge of and/or were counseled not to admit that any defects existed in class televisions or that improper maintenance recommendations were incorporated in the Owner's Instructions. Samsung television dealers and authorized service centers (who also had a vested financial interest in concealing and suppressing the actual cause of class television failures) blamed television failures on certain conditions for which the Defendants were not responsible and/or denied the existence of class television defects.

43. The Defendants had actual knowledge, constructive knowledge and/or should have known upon proper inquiry and testing that class televisions were defective, suffered from extensive irreversible premature performance degradation during the warranty period and did not have a normal and/or reasonable useful life before sales of

to deceive).  The proposed class representative did not learn his class television were defectively designed and manufactured until after it failed.

16

class televisions commenced in the United States.  This information was technical in nature, proprietary and not known by the ordinary consumer or the public including the proposed class representative and proposed class members.  The proposed class representative and proposed class members were ignorant of this technical information through no fault of their own.

44. Although the Defendants knew defects in class televisions caused premature failure (including but not limited to premature failure of the light engine, the DLP chip and DMD printed wiring board), the Defendants knowingly and actively concealed material information from prospective purchasers and actual purchasers with the intent to deceive purchasers and promote class television sales.

45. There are such wide spread problems with Samsung DLP television light engines that there are thousands of web entries discussing failure of the engine and the resulting white spots produced on the television screen when the DLP chip mirror hinges lock up (hinge memory caused by excessive operating temperatures).

46. SEA's management's knowledge of class television defects (together with predecessor models) was derived from warranty claims, claims supervisors, customer complaints and monitoring of performance of class televisions by SEA quality assurance employees. Additionally, the number of replacement components and subsequent component revisions would have placed SEA management on notice of class television defects.  Knowledge of class television defects is

further imputed to the Defendants prior to sale of class televisions because predecessor model DLP televisions using substantially similar if not identical components were also prematurely failing within their reasonably expected life.  The Defendants elected to place into the stream of commerce class televisions that they knew would be adversely affected by the failure to regulate excessive light engine heat.

47.  Additional information supporting allegations of fraud and fraudulent conduct is in the control of the Defendants.  This information includes but is not limited to technical root cause analyses, correspondence with Texas Instruments (the manufacturer of the DLP chip) remedial measures, warranty claims and internal corporate communications concerning how to deal with consumers who claim their light engine, DLP chip and DMD printed wiring board sub-assemblies were defective.

48.  Material information fraudulently concealed and/or actively suppressed by the Defendants includes but is not limited to class television defects described in the preceding paragraphs.

49. Material information was fraudulently concealed and/or actively suppressed in order to sell class televisions to uninformed consumers (including the proposed class representative and proposed class members) premised on affirmations and representations of reliable long-life televisions with low maintenance, inexpensive operating costs, high quality, superior performance and durability

when in fact class televisions contained a known thermal defect that would severely affect the useful life of the television.

50. The Defendants (particularly sales and marketing executives at SEA) advertised and otherwise created the reasonable expectation that class televisions would last over 60,000 hours and more specifically that the DLP chip had an expected life in excess of one trillion cycles (20 years) before experiencing hinge failure. Material information was fraudulently concealed and/or actively suppressed in order to protect the Defendants' (and authorized television dealers') corporate profits from loss of sales from adverse publicity, reduce warranty repair costs and limit Samsung brand disparagement.

51. The fraudulent conduct of the Defendants tolls any applicable statutes of limitations since the fraudulent misrepresentations concerning the true cause of failures in class televisions was an inherently unknowable fact given the technical nature of the class television design and manufacturing defects.

52. Class television owners do not possess the requisite technical skills in electronics to discern the design and manufacture defects in their televisions or the requisite technical skills to surmise the proper television maintenance and maintenance intervals for class televisions.

53. Massachusetts statutory law, the doctrine of equitable tolling and/or the discovery rule toll the applicable statutes of

limitations for all class televisions because of the Defendants' fraudulent conduct including but not limited to concealment of class television defects and omission of material facts.

54. Some proposed class members relied on the Defendants' fraudulent misrepresentations concerning the cause of class television failures and delayed bringing suit against the Defendants.   These misrepresentations concern the fact that class televisions were failing due to design and manufacture defects.   The Defendants fraudulently attributed class television failures as caused by environmental factors such as excessive heat and dust, voltage surges and power brownouts together with other exculpating conditions for which the Defendants had no responsibility.

55. The Defendants are estopped from asserting that statutes of limitations were running for the duration of time class members relied on the Defendants' fraudulent representations.

56. The Defendants are equitably estopped from asserting the statutes of limitations were running against the claims of class members.

57. The Defendants had a duty to disclose to class television owners there were design and manufacture defects in class televisions and the Owner's Instructions set forth the wrong maintenance recommendations and maintenance intervals.

58. This duty arose because the Defendants knew that there were defects in the televisions and inaccuracies in the Owner's

Instructions that affected television operation and safety while class television owners were not cognizant of these defects and dangers.  In order to lower production costs and increase profit, the Defendants further incorporated insufficiently rated electronic components in the class televisions that prematurely failed and increased the risk of an electrical fire.

59. The Defendants continuously and affirmatively concealed the actual characteristics of class televisions from the proposed class representative and other purchasers.  The Defendants breached their affirmative duty of disclosure to class television owners (and particularly to owners who inquired as to the cause of class television failures).

60. The Defendants had superior and exclusive knowledge of class television design and manufacture defects and owed class television owners a fiduciary duty to disclose defects including those defects creating an unreasonable risk of harm.[3]

61. The Defendants breached express and implied warranties and actively and affirmatively misrepresented, fraudulently concealed and suppressed the existence of defects in class televisions and omissions in accompanying Owner's Instructions.

62. The warranties accompanying class televisions were procedurally and  substantively unconscionable under Mass. Gen. L. ch. 106, §2-

_____

[3] Since television component overheating is a serious fire safety issue, the Defendants had an affirmative duty to disclose the television defects together with associated risks.

302 and other applicable state warranty laws because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that class televisions were defective, the inability of class television purchasers to bargain with the Defendants to increase durational warranties, the lack of knowledge, lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including but not limited to durational warranties that unfairly favored the Defendants particularly where there were class television defects known only to the Defendants and unfairly shifting repair costs to consumers when class televisions prematurely failed during their reasonably expected life), absence of effective warranty competition and the fact that class televisions failed with substantially fewer hours of operation than competitive televisions from other manufacturers.

63. Class television warranties are oppressive, unreasonable and unconscionable. Increased unanticipated class television costs, class televisions containing defects at the time of sale whose existence was known only by the Defendants and premature television failure constitute an unfair contractual surprise.

64. Purchasers of class televisions reasonably expect televisions to function well in excess of one year before requiring extensive expensive repairs. This is particularly true where the purchasers of class televisions believed the useful expected life of the televisions was in excess of 60,000 hours.

65.  Given  the  conduct  of  the  Defendants  and  the  design  and manufacture defects in class televisions (that the Defendants knew were inherently defective prior to the time of sale), the durational limitations  of  the  warranties  are  oppressive,  unreasonable  and unconscionable  because  the  warranty  disclaimers  of  the  proposed class representative and proposed class members were neither knowing nor voluntary.

66. The proposed class representative and proposed class members had an absence of meaningful choice in the purchase of class televisions and  the  contractual  terms  were  unreasonably  favorable  to  the Defendants since the Defendants were fully aware of defects in the class  televisions  that  substantially  reduced  the  expected  useful life  of  the  television.  The  proposed  class  representative  and proposed  class  members  were  unaware  of  defects  in  the  class televisions at the time of purchase.

67. The bargaining position of the Defendants for the sale of class televisions was grossly disproportionate and vastly superior to that of  individual  television  purchasers  including  the  proposed  class representative  and  proposed  class  members  because  the  Defendants knew  there  were  defects  in  class  televisions  affecting  the durational operation.

68. The Defendants included unfair contractual provisions concerning the length and coverage of the express warranty when they knew that

class televisions were inherently defective and dangerous and had been inadequately tested.

69. The Defendants knew defects in class television components would cause certain expensive to repair failure within one-third of the useful expected life of the television.  The Defendants artificially limited the duration of the warranty period to avoid performing warranty repairs in order to maximize profits through the sale of defective televisions.

70. The Defendants unconscionably sold defective class televisions to the proposed class representative and class members without informing these purchasers that the class televisions were defective.

71. The Defendants' conduct renders the television purchase contract so one-sided as to be unconscionable under the circumstances existing at the formation of the television purchase contract.

72. The durational limitation of the express warranties accompanying the class televisions is unreasonable and unconscionable since the Defendants actively concealed known television defects and issued incorrect maintenance recommendations and maintenance intervals. The proposed class representative and proposed class members had no notice of or ability to detect the defects.

73. The Defendants restricted the warranty duration to one year for class televisions in an effort to avoid the cost of repairs because

they were cognizant of class television defects that existed at the time of sale.

74. Competitive televisions manufactured and sold at the time the class televisions were manufactured and sold ordinarily last longer than warranties accompanying class televisions.

75. The Defendants engaged in unconscionable fraudulent commercial practices and attempted to conceal class television design defects, manufacturing defects and improperly recommended maintenance.

76. The Defendants are engaged in a continuing fraud concerning the true underlying cause of class television failures.

77. The Defendants failed to test adequately class televisions in appropriate consumer environments prior to marketing, distribution and sale.

78. The Defendants' unconscionable conduct precludes any exclusion of incidental and consequential damages or any other limitation of remedies. This wrongful conduct was orchestrated at SEA's headquarters by its upper level management.

79. The proposed class representative and proposed class members operated and maintained their class televisions in conformity with the respective Owner's Instructions and provided the requisite notice to the Defendants' authorized agents for warranty repair after their class televisions failed.

80. Repair costs for class television failures range between $250.00 and $750.00, depending on the extent of the damage and cost of

replacement components. Some class televisions are not repairable because parts are no longer available and there was no guarantee that the repair would be successful or reasonably long in duration. In many instances, continuing to incur costs to repair a defective class television is not warranted.

81. Even if class televisions do not fail entirely, class television owners have sustained an ascertainable financial loss including but not limited to increased maintenance costs and substantially reduced performance. Individuals who own or have owned class televisions sustained diminution of the resale value of their class televisions since knowledge of problems with class televisions became public information.

82. If the proposed class representative and proposed class members had been informed of the defects in class televisions or operational costs, they would not have purchased their respective class televisions or would have paid substantially less.[4]

### COUNT I
### BREACH OF MASS. GEN. L. CH. 106, §2-314: IMPLIED WARRANTY OF MERCHANTABILITY BY THE DEFENDANTS RESULTING IN FINANCIAL HARM

83. The proposed class representative and proposed class members incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

---

[4] Given the vast disparity in expertise, including knowledge of television design, manufacture and testing processes, the proposed class representative and proposed class members had to rely on the Defendants' representations and warranties concerning the class televisions.

84.  The proposed class representative and proposed class members purchased class televisions from the Defendants' authorized dealers for non-commercial purposes.

85.  The Defendants are merchants with respect to consumer televisions.  Class televisions are goods within the meaning of the Uniform Commercial Code as adopted by Massachusetts.

86.  The Defendants impliedly warranted to the public and owners of class televisions that class televisions were merchantable and fit for the ordinary purposes for which consumer televisions are used.

87.  As manufacturers of consumer goods, the Defendants are precluded from excluding or modifying an implied warranty of merchantability or limiting consumer remedies for breach of this warranty.

88.  The Defendants failed to provide written notice to the proposed class representative and other class television purchasers of implied warranty exclusions at time of purchase because the warranty exclusion was in the sealed television box and was ineffective since it was not conspicuous within the meaning of Mass. Gen. L. ch. 106, §2-316.

89.  Class televisions were not of merchantable quality and were unfit for the ordinary purposes for which televisions are used.  This is particularly true since class televisions were represented as state of the art and having a life of 60,000 hours.

90.  The Defendants received adequate notice of their breach of the implied warranty of merchantability and request for repair or

replacement. In the alternative, class television owners, as indirect purchasers were not required to issue notice of the warranty breach to the Defendants and/or lack of notice of warranty breach did not result in any prejudice to the Defendants. The Defendants declined to offer the proposed class representative an effective remedy for their defective televisions.

91. The Defendants breached their implied warranties in that class televisions were defective with respect to design and manufacture.

92. Class televisions are predisposed to premature failure in normal anticipated operating environments because one or more of the following conditions existed at the time these televisions were manufactured: (1) The respective class television's Owner's Instructions and accompanying literature set forth the wrong maintenance recommendations and maintenance intervals; (2) Class televisions incorporate insufficient ventilation and heat sinks (including thermal paste) to dissipate heat and/or insufficient heat shielding between components; (3) Class televisions incorporate a defective air filtration system that fails to prevent the accumulation of dust and resulting heat build up on internal components; (4) Class televisions incorporate sub-standard electronic components that prematurely fail including but not limited to components that have insufficient temperature and voltage performance; and, (5) Electronic components in class televisions are defectively designed and manufactured including but not limited to

the light engine, the DLP chip, DMD printed wiring board and color wheel assembly.

93. Class televisions are not reliable and owners of these televisions have lost confidence in the ability of class televisions to perform the function of safe reliable entertainment.

94. Even though the proposed class representative and proposed class members complied with television use and maintenance recommendations for their respective class televisions, their respective televisions prematurely failed.

95. The proposed class representative and proposed class members reasonably relied upon the expertise, skill, judgment and knowledge of the Defendants and upon their implied warranty that class televisions were of merchantable quality and fit for their intended use.

96. The proposed class representative and proposed class members relied on implied warranties of merchantability made by the Defendants concerning the class televisions and sustained an ascertainable loss and financial injury resulting from the breach of those warranties by the Defendants.

97. The proposed class representative and proposed class members had an independent legitimate consumer expectation that the class televisions would last well in excess of 10 years before requiring any major repairs based on industry standards, competitor products, consumer product magazines, prior television ownership and reputation

of the Defendants for manufacturing durable quality electronic goods. There were no statements made by the Defendants or their agents that contradicted their legitimate consumer expectations at the time of purchase.

98. The proposed class representative and proposed class members could not have reasonably discovered the defective condition of the class televisions at the time of purchase.

99. The Defendants' breach of implied warranties of merchantability was the direct and proximate cause of financial harm to the proposed class representative and the proposed class members.

   Wherefore, the proposed class representative and proposed class members demand judgment against Defendants including monetary damages, interest, costs and attorney's fees.

### COUNT II
### BREACH OF MASS. GEN. L. CH. 106, §2-313: BREACH OF EXPRESS WARRANTY BY THE DEFENDANTS RESULTING IN FINANCIAL HARM

100. The proposed class representative and proposed class members incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

101. The Defendants expressly warranted to the public including the proposed class representative and proposed class members, that class televisions were merchantable and fit for the ordinary purposes for which televisions are used.

102. The Defendants extensively advertised that class televisions were superior in construction and extolled the quality and virtues

of class televisions including superior design and manufacture, safety, durability, reliability and performance when in fact class televisions contained known defects that severely reduced the useful life of the television.

103. The proposed class representative was unaware of any express warranty exclusions because he did not receive his class television Owner's Instructions and warranty materials that contained the purported warranty exclusions at the time of purchase.  His television and shipping box was not marked "irregular", "factory seconds", "as is", "with all faults" or "damaged".

104. Class television Owner's Instructions and warranty materials were in the sealed shipping box that contained the television.[5] Consequently, the proposed class representative was not presented with an opportunity to review (let alone bargain for) warranty provisions at the time of purchase of their class televisions.

105. The Defendants represented that class televisions were of a particular standard or quality when they in fact were not.  The television failed at less than one third of the warranted hours.

106. The Defendants' representations (including representations made by employees of authorized retail dealers relying on specification and sales materials generated by the Defendants) were made in

---

[5] Even if the Owner's Instructions and warranty materials had been present for pre-purchase review, the warranty exclusion clause failed to satisfy conspicuity and other requirements of Mass. Gen. L. ch. 106, §2-316.

newspapers, magazines, television and Internet advertising together with sales literature viewed by the proposed class representative and proposed class members.

107. The Defendants breached their express warranties in that class televisions were defective with respect to design and manufacture and did not perform as warranted.

108. The Defendants received adequate notice of their breach of their express warranties and failed to cure the warranty breaches. In the alternative, the proposed class representative, as an indirect purchaser was not required to issue notice of the warranty breach to the Defendants and/or lack of notice of warranty breach did not result in any prejudice to the Defendants.

109. Class televisions are not reliable and owners of these televisions have lost confidence in the ability of class televisions to perform the function of safe reliable entertainment.

110. The proposed class representative and proposed class members complied with television maintenance recommendations for their respective class televisions.

111. The Defendants failed to remedy the proposed class representative's defective class television during the express warranty period although these defects were known to the Defendants at that time. Class televisions owned by proposed class members also prematurely failed and/or experienced substantial performance diminution within the express warranty period.

112. The proposed class representative and proposed class members relied on express warranties made by the Defendants concerning the class televisions and sustained an ascertainable loss and other financial injury resulting from the breach of those warranties by the Defendants.

113. The proposed class representative and proposed class members could not have reasonably discovered the defective condition of their class televisions prior to failure.

114. The Defendants' breach of their express warranties was the direct and proximate cause of cause of financial harm to the proposed class representative and the proposed class members.

115. The express warranty remedy set out in the Owner's Instructions of class televisions fails of its essential purpose under Mass. Gen. L. ch. 106, §2-719(2) and the limitation of consequential damages is unconscionable under § 2-719(3) because of the conduct of the Defendants described *supra*.

Wherefore, the proposed class representative and proposed class members demand judgment against Defendants including monetary damages, interest, costs and attorneys' fees.

**COUNT III**
**INTENTIONAL MISREPRESENTATION BY NONDISCLOSURE OF MATERIAL**
**FACTS BY THE DEFENDANTS RESULTING IN FINANCIAL HARM**

116. The proposed class representative and proposed class members incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

33

117. The proposed class representative and proposed class members relied upon the Samsung brand name as representing quality consumer electronic goods and were confident as to the quality it possessed. Class televisions are predisposed to premature failure in normal anticipated operating environments because one or more of the following conditions existed at the time these televisions were manufactured: (1) The respective class television's Owner's Instructions and accompanying literature set forth the wrong maintenance recommendations and maintenance intervals; (2) Class televisions incorporate insufficient ventilation and heat sinks (including thermal paste) to dissipate heat and/or insufficient heat shielding between components; (3) Class televisions incorporate a defective air filtration system that fails to prevent the accumulation of dust and resulting heat build up on internal components; (4) Class televisions incorporate sub-standard electronic components that prematurely fail including but not limited to components that have insufficient temperature and voltage performance; and, (5) Electronic components in class televisions are defectively designed and manufactured including but not limited to the light engine, the DLP chip, DMD printed wiring board and color wheel assembly.

118. The Defendants knew there were defects in the design and manufacture of class televisions and that testing of class televisions was inadequate.  This information was not ascertainable

by the proposed class representative and proposed class members who purchased class televisions.  At the time of sale, the Defendants had a duty to disclose these defects and other material information but elected not to.  The Defendants, directly and/or indirectly failed through authorized retail vendors to disclose class television defects and other material facts to class television purchasers.  This duty arose from inequality of condition and knowledge together with other attendant circumstances.

119.  The Defendants actively concealed material facts concerning class televisions including but not limited to operating and projected repair costs.

120.  The Defendants should have disclosed facts basic to the purchase of class televisions since the Defendants knew the proposed class representative and proposed class members were uniformed or mistaken as to the operating and projected repair costs associated with class televisions including but not limited to replacement of the light engine, the DLP chip and DMD printed wiring board.  Class televisions are predisposed to premature failure in normal anticipated operating environments because one or more of the following conditions existed at the time these televisions were manufactured: (1) The respective class television's Owner's Instructions and accompanying literature set forth the wrong maintenance recommendations and maintenance intervals; (2) Class televisions incorporate insufficient ventilation and heat sinks

(including thermal paste) to dissipate heat and/or insufficient heat shielding between components; (3) Class televisions incorporate a defective air filtration system that fails to prevent the accumulation of dust and resulting heat build up on internal components; (4) Class televisions incorporate sub-standard electronic components that prematurely fail including but not limited to components that have insufficient temperature and voltage performance; and, (5) Electronic components in class televisions are defectively designed and manufactured including but not limited to the light engine, the DLP chip, DMD printed wiring board and color wheel assembly.

121. The proposed class representative and proposed class members would have reasonably expected a disclosure from the Defendants of facts concerning class television operating costs because of the customs of the trade and/or other objective circumstances.

122. The Defendants intended that the proposed class representative and proposed class members should not be informed of material facts concerning attributes of the class televisions that would negatively influence the decision to purchase class televisions. The Defendants knew that purchasers of class televisions were acting under mistakes of fact (including but not limited to expected useful operating life, durability of electronic components and other operating costs) that were basic to the transaction and disclosure would reasonably be expected.

123. If the Defendants had disclosed that class televisions were defective and/or had been inadequately tested and would require regular replacement of light engines (and subassembly components), printed wiring boards and other expensive parts, the proposed class representative and proposed class members would not have purchased their class televisions and/or paid substantially less.

124. The proposed class representative and proposed class members suffered direct and proximate ascertainable loss, financial harm and property damage caused by the Defendants' nondisclosure of material facts concerning defects, operational costs and maintenance of class televisions including but not limited to the fact that class televisions would require regular replacement of the light engine, the DLP chip and DMD printed wiring board.

Wherefore, the proposed class representative and proposed class members demand judgment against Defendants including a refund for the purchase price of class televisions, statutory damages, interest, costs and attorneys' fees.

**COUNT IV**
**VIOLATION OF MASS. GEN. L. CH. 93A:**
**UNFAIR AND DECEPTIVE TRADE PRACTICES**

125. The proposed class representative and proposed class members incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

126. The Defendants are persons within the context of Mass. Gen. L. ch. 93A, §1.

127. The Defendants had actual knowledge that class televisions would prematurely fail during the useful life of the television shortly after production of the class televisions commenced. The Defendants violated 940 Mass. Code Regs. 3.16 by not making this fact known to prospective class television purchasers.[6]

128. The Defendants through their authorized Samsung television dealers fraudulently, intentionally, negligently, and/or recklessly misrepresented to proposed class representative and proposed class members the required maintenance and/or maintenance intervals of class televisions.

129. The Defendants through their authorized Samsung television dealers fraudulently, intentionally, negligently and/or recklessly misrepresented to the proposed class representative and proposed class members the characteristics of class televisions with respect to design, manufacture, durability, longevity, maintenance and operating costs.

130. The Defendants through their authorized Samsung television dealers fraudulently, intentionally, negligently and/or recklessly concealed from the proposed class representative and proposed class

---

[6] This regulation recites that "an act or practice is a violation of Mass. Gen. L. ch. 93A, §2 if:
(1) It is oppressive or otherwise unconscionable in any respect; or
(2) Any person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction;"

38

members the defects in the class televisions even though the Defendants knew or should have known of design and manufacturing defects shortly after production of the class television commenced.

131. The Defendants had actual knowledge that design and manufacturing defects were causing extensive irreversible premature performance degradation in class televisions shortly after production of the class television commenced.

132. The Defendants actively suppressed the fact that class televisions were prematurely failing because of design and manufacture defects and incorrect maintenance recommendations and maintenance intervals.

133. The Defendants secretly repaired some class televisions to prevent dissemination of defects.

134. The Defendants intended or should have known that the proposed class representative and proposed class members would rely upon misrepresented characteristics of class televisions with respect to design, manufacture and information in the Owner's Instructions.

135. The proposed class representative and proposed class members complied with maintenance recommendations for their respective class televisions.

136. Although the Defendants knew defects in class televisions and misinformation in the Owner's Instructions were causing premature class television failures, the Defendants attempted to shift the responsibility and cost for repairs to individual television owners.

137. One scheme included blaming class television failures on owners for poor or improper maintenance, electrical voltage fluctuations and other conditions for which the Defendants were not responsible.

138. Rather than conduct an open and fair inspection and repair procedure for all class televisions, the Defendants employed unfair and deceptive trade act practices to deny repairs and/or repair reimbursements.

139. If the Defendants had not concealed class television defects from proposed class representative and class members within the express warranty period, class televisions would have repaired without cost under the original warranty.

140. The Defendants fraudulently concealed unmistakable manifestations of impending class television failures within the express warranty period without inspecting, repairing or replacing damaged internal class television components.

141. The Defendants violated ch. 93A by failing to inform class television owners prior to purchase that class televisions were defectively designed and manufactured and were accompanied by incorrect maintenance recommendations and maintenance intervals.

142. The Defendants violated ch. 93A by failing to inform class television owners prior to purchase that class televisions would require regular replacement of expensive light engines, DLP chips and DMD printed wiring boards.  The Defendants further violated ch. 93A by failing to inform prospective class television purchasers

that the Defendants had not properly tested the televisions including but not limited to the lamp assemblies and electronic components.

143. The Defendants committed unfair and deceptive business trade act practices as set forth in all preceding counts and as described in this count. The Defendants repeatedly violated ch. 93A on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,* the causes of the failures of class televisions owned by the proposed class representative and proposed class members.

144. The secret warranty programs for class televisions initiated by the Defendants and other wrongful conduct of the Defendants that violates the proscribed conduct of ch. 93A occurred within the four year limitations period set out in the statute.

145. As a proximate and direct result of the Defendants' unfair and deceptive business trade practices, the proposed class representative and proposed class members purchased class televisions and sustained financial harm.

146. The proposed class representative and proposed class members experienced premature class television failure, diminution of television resale value, increased maintenance costs and incurred other substantial monetary damages and inconvenience.

147. The conduct of the Defendants violates ch. 93A as established by statutes, regulations and common law and is oppressive,

41

deceptive, unfair and/or unscrupulous; and, caused unavoidable substantial injury to class television owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

Wherefore, the proposed class representative and proposed class members domiciled in Massachusetts demand judgment against the Defendants including multiple damages, interest, costs and attorneys' fees.

## COUNT V
## UNJUST ENRICHMENT / RESTITUTION

148. The proposed class representative and proposed class members incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

149. The proposed class representative and proposed class members did not have valid and binding warranties and contracts with the Defendants.

150. If the Defendants had disclosed that class televisions were defective and/or had been inadequately tested and would require regular replacement of the light engine, DLP chip and DMD printed wiring board and other expensive components, the proposed class representative and proposed class members would not have purchased their class televisions and/or paid substantially less. The proposed class representative and proposed class members do not have an adequate remedy at law.

151. The proposed class representative and proposed class members conferred a direct monetary benefit on the Defendants but for the Defendants' misrepresentations, fraud, active acts of concealment and other wrongful conduct the proposed class representative and proposed class members would not have conferred and would have otherwise expected remuneration from the Defendants at the time of purchase.   The proposed class representative and proposed class members enriched the Defendants beyond their contractual rights. The proposed class representative and proposed class members thought they were purchasing high quality televisions with 60,000 hours of life and received instead defective class televisions that prematurely failed within one-third of its expected useful life thereby mistakenly conferring benefits on the Defendants. In the alternative, the Defendants should not be allowed to enforce an unconscionable warranty to exclude parallel claims.

152. The Defendants obtained financial gain by selling class televisions and replacement parts for class televisions that abnormally and prematurely failed due to design and manufacture defects.   At the time of sale, the Defendants were aware class televisions incorporated defective components as described *supra*.

153. The proposed class representative and proposed class members sustained monetary damages.   Allowing the Defendants to retain their unjust monetary enrichment from their wrongful and unlawful acts

would violate the fundamental principles of justice and would be otherwise inequitable.

Wherefore, the proposed class representative and proposed class members request that the Defendants disgorge their profits from their wrongful and unlawful conduct and that the court establish a constructive trust funded by the benefits conferred upon the Defendants.  The proposed class representative and proposed class members should be designated beneficiaries of the trust and obtain restitution for their out of pocket expenses caused by the Defendants' conduct.

## RELIEF REQUESTED

Wherefore, the proposed class representative and proposed class members request:

a. A class certification order pursuant to Fed. R. Civ. P. 23(c) designating as class members those entities defined in ¶24 with any modifications to the class or sub-classes as required for the efficient and equitable administration of justice in this proceeding;

b. An Order appointing Stephen Davis as representative of the class and designating Thomas P. Sobran as counsel for the class pursuant to Fed. R. Civ. P. 23(g);

c. Judgment for the class representative and class members against the Defendants on all issues and counts;

d. Damages for the class representative and class members including but not limited to multiple damages where applicable together with prejudgment interest, costs and attorneys' fees;

e. Injunctive relief compelling the Defendants to perform the following procedures to all class televisions without monetary charge: (1) Inspect and replace where necessary the light engine and/or components including but not limited to the DMD printed wiring board, DLP chip, the color wheel assembly and other light engine associated components with unacceptable premature failure rates; and, (2) Perform any other reasonably necessary repair and service procedure to prevent the premature failure of the class television for a period of twelve 10 years from the date of purchase.

f. Restitution for all television repairs and class television replacement costs incurred by class members resulting from the defectively designed and manufactured class televisions and incorrect television maintenance recommendations and maintenance intervals as set forth in the respective class television Owner's Instructions including compensation for any previous repairs for a period of ten 10 years from the date of purchase.

g. Restitution for all unanticipated increased past, present and future class television maintenance costs incurred for a period of ten 10

45

h.  years from the date of purchase.

i. Disgorgement of the Defendants' revenue from their wrongful and unlawful conduct and the establishment of a constructive trust funded by the benefits conferred upon the Defendants. The proposed class representative and class members should be designated beneficiaries of the trust and obtain restitution for their out of pocket expenses caused by the Defendants' conduct;

j. Any other relief deemed necessary or appropriate by the court.

## REQUEST FOR JURY TRIAL

The proposed class representative and proposed class members request trial by jury on all issues and counts.

Stephen Davis,
By his attorney,
on behalf of himself and
proposed class members,


*/s/ Thomas P. Sobran*
Thomas P. Sobran
7 Evergreen Lane
Hingham, MA 02043
BBO# 471810
(781) 741-6075
tsobran@sobranlaw.com

46